TOMÁS A. BERRÍOS ET AL., ETC., Plaintiffs and Appellees, v. INTERNATIONAL GENERAL ELECTRIC (P.R., INC.), Defendant and Appellant.

No. 573. Decided April 18, 1963.

*José Trías Monge, Richard H. Francis, Horacio R. Subirá,* and *Jorge Segarra Olivero* for appellant. *A. Ramírez Silva* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The appellees, Tomás A. Berríos and his wife Matilde Berríos, sued appellant International General Electric, P.R., Inc., to recover damages because according to their allegations they were the victims of malicious prosecution on the part of appellant and of a wrongful attachment procured by the latter.

The facts of the case as revealed from the transcript of the evidence and of the findings of fact made by the trial court on July 21, 1961 are the following:

By virtue of a conditional contract of sale executed on November 1, 1958, Berríos acquired from appellant a stove and a refrigerator for the sum of $461. As down payment, Berríos issued a check, No. 97, for $100. On November 20, that check or another one with the same number signed by the same person[1] was certified by Banco Popular de Puerto Rico at appellant's request, but the check was never cashed and on the contrary, it was misplaced in the hands of appellant's employees. On the face of the aforesaid conditional sales contract there appears a stamp which reads: "Received —20 Nov. 1958."

Although the evidence was contradictory, the trial judge found that appellant's employees made demands on Berríos to issue a new check on the ground that in the books of the corporation he still appeared as owing $100. The testimony of appellant's witnesses was to the effect that when appellant's officers realized, a year after the certification of the

---

[1]The evidence is not clear on this point. (T.E. p. 59 *et seq.*, hearing of February 21, 1961, and p. 15 *et seq.*, hearing of March 27, 1961.)

check, that they had not received the cash which was repre-sented by said check, they consulted Banco Popular and were informed by the latter that the regulations and proceedings established by said bank required an express authorization of the drawer before making payment of the amount repre-sented by the certified check which had been lost. (T.E. pp. 65, 69 and 84, hearing of February 21, 1961, and pp. 42, 43, 45 and 46, hearing of March 27, 1961.) Appellant's witnesses testified that they had no success in their endeavors, of which endeavors the appellees denied having any knowledge. (T.E. pp. 69, 87, 94 and 95, hearing of February 1, 1961.)

On January 29, 1960 appellant filed in the District Court, Mayagüez Part, an action against Berríos for the repossession of chattel property alleging the aforesaid conditional sale and the breach of the contract on the part of the purchaser because of his default in the payment of $100 of the selling price. Simultaneously a motion was filed requesting the effectiveness of the judgment, a writ of attachment was obtained and the corresponding order was issued to the marshal of the court for the service of said order. On February 5, 1960 at about three o'clock in the afternoon, marshal Edil Rivera went together with an employee of the appellant to the residence of Berríos and his wife to serve the attachment and used a small van for the purpose of transporting the property in question, that is, the refrigerator and the stove. (T.E. p. 14 *et seq.*, hearing of February 21, 1961.)

Marshal Rivera testified that although he wrote on the writ of attachment that the same had been executed and, furthermore, he delivered the papers of said attachment to Berríos, subsequently he added in the writ the words "Set aside" (T.E. p. 19) because ultimately he did not execute it. He continued testifying that the reason why he did not execute said attachment was that the appellee, although he alleged that he had paid, could not show the receipt; he tried to make some calls to Ponce without success; he told

him that he was going to pay and that upon writing the check he was advised by another person to first see Mr. Ramírez Silva. While in the office of Mr. Ramírez Silva, Berríos issued a check for $100, dated February 5. On the back thereof he wrote and signed a statement to the effect that "payment made under protest in order to prevent the attachment decreed but reserving to myself the right of any claim that I may have against the plaintiff to whom I have already paid the amount claimed." Said check was received and cashed by appellant. Six months later the case was dismissed for lack of prosecution.

The trial court found, and the record shows, that the employer as well as the subordinate employees of Berríos were present during the incident of the attachment; that the appellee "not only suffered the natural nervous upset caused to a citizen by a judicial process of this nature, but also the shame and the disgrace which this incident implied to his good name. . . ." The wife suffered a shock, losing consciousness, and causing appellee to suffer, as a consequence thereof, the additional concern and anguish of the effect that this might produce on his wife, because the latter was suffering from high blood pressure. This condition became so strained by reason of the incident of the attachment that the appellee had to stay in bed under medical treatment for several days and then had to be confined for three days in a hospital in Ponce. (T.E. pp. 50, 55, 62–65, hearing of March 27, 1961.)

The trial court held that the action of repossession of chattel property was filed by appellant knowing that appellees did not owe said sum under the conditional sales contract, it being obvious that said action was filed for the purpose of threatening appellant Berríos to do what in law he had no obligation to do, that is, to issue a new check. Said court held that under those circumstances the appellant maliciously filed the action of repossession and that said

action constitutes a malicious prosecution against the appellees, for which reason they are entitled to recover compensation for the anguish, annoyance and inconveniences suffered by the appellees as a consequence of this unjustified judicial proceeding and the subsequent wrongful attachment, the court fixing the amount of said damages in $5,100, the appellant being ordered, further, to pay costs plus $1,000 for attorney's fees.

Appellant sets forth that the trial court committed error (1) in deciding that the mere service of an attachment without taking of the chattel property is source for cause of action for damages; (2) in concluding that the findings of the court constituted a malicious prosecution on the part of the appellant in filing an action of repossession knowing that it did not have a cause of action against the plaintiff; (3) in weighing the evidence, and (4) in ordering appellant to pay attorney's fees.

1.—We shall first dispose of the second error charged. In 1928 this Court adopted the doctrine of the English common law and of the minority of the States of the Union upon deciding in the case of *López de Tord & Zayas Pizarro* v. *Molina,* 38 P.R.R. 737 (1928), that in Puerto Rico there is no civil action for damages for malicious prosecution as a consequence of a civil action.[2] Subsequently, in the case of *Díaz* v. *Distribuidores R.C.A.,* 47 P.R.R. 530 (1934), it was suggested that "certain suits, malicious in their nature, might produce damages." But immediately thereafter it adds that the filing of a civil suit in itself has no damaging character, stating that specific damages should be alleged and proved to warrant the award of compensation. The only case in Puerto Rico in which an action for damages for malicious prosecution by reason of

---

[2] On this matter, see Amadeo, *Acciones Civiles de Daños y Perjuicios en el Derecho Puertorriqueño, por el Uso Injustificado de los Procedimientos Legales,* VII *Rev. C. Abo. P.R.* 234 (1944).

a civil suit has been upheld was *Fonseca* v. *Oyola*, 77 P.R.R. 496 (1954). However, that case involved extreme circumstances and as it was said at p. 499: ". . . here the evidence showed the malicious prosecution on defendant's part in commencing several actions of unlawful detainer without probable cause . . . persecuting defendant with his conduct and actions as well as with said suits, which he based on the alleged nonpayment of a rental in excess of that which is allowed by the federal statute." We do not see in the present case the extraordinary circumstances which place it off the scope of the general rules existing in Puerto Rico and reiterated in *Pereira* v. *Hernández*, 83 P.R.R. 156 (1961), in the sense that in general terms the Puerto Rican law does not recognize an action of this nature.

Therefore, we hold that the trial court committed error in granting the action of malicious prosecution. The other errors, however, were not committed.

2.—Basically, appellant's contention as to the finding of the trial judge that plaintiff Berríos suffered damages as a consequence of the service of the attachment is that the mere service of an attachment without taking of the property is not source of action for damages. It argues that, since the marshal did not seize the property in question depriving Berríos of his possession, the attachment was never consummated and what took place was merely an attempt to make an attachment—a mere service. It maintains that an action for wrongful attachment does not lie because in addition to the fact that the property remained in plaintiff's house it could not be said that the suit of repossession terminated favorably to Berríos and that, as we have pointed out, the action of repossession terminated with an order of dismissal because of lack of prosecution for six months under Rule 11 of the Rules for the Administration of the Court of First Instance.

Although partially correct, its argument does not operate as a release of liability. Let us see.

In *Martí* v. *Hernández*, 57 P.R.R. 804 (1940), it was said that in a cause of action for damages for wrongful attachment the plaintiff must allege and prove that his property has been attached; that the action which has been brought against him and in which the attachment has been decreed terminated by a final and unappealable judgment in his favor; and the damages suffered. For the action of a marshal executing a writ of attachment to constitute a true attachment, the latter should take physical possession of the personal property and designate a depositary. *Pérez* v. *Matos*, 48 P.R.R. 582 (1935).

We must therefore conclude that in the present case the attachment on the property purchased by Berríos was not executed inasmuch as it appears from the evidence that they were never taken out of the house (T.E. p. 30, hearing of February 21, 1961), nor did the marshal take possession thereof. What merely happened was that the marshal served the papers of the attachment during a discussion at the house of Mr. Berríos, later it delivered them to the latter (T.E. p. 19, hearing of February 21, 1961), and subsequently, in the office of Mr. Ramírez Silva, after Berríos delivered to appellant's employees the check under protest, he wrote the words "Set aside" on the order of attachment. (T.E. p. 22, hearing of February 21, 1961.)

It is well to indicate that the action to recover damages caused by an alleged wrongful attachment is an "ex delicto" action based on § 1802 of the Civil Code (31 L.P.R.A. § 5141). *Méndez* v. *E. Solé & Co.*, 62 P.R.R. 805 (1944); *Muñiz de León & Co.* v. *Melón Hnos. & Cía.*, 56 P.R.R. 314 (1940). Said article provides insofar as pertinent: "A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done." This is the sanction of the Aquilian lia-

bility. On this principle we said in *Hernández* v. *Fournier*, 80 P.R.R. 94 (1957):

"According to the section in question [§ 1802 of Civil Code], which establishes one of the fundamental principles of our jurisprudence—that of the Aquilian liability for personal acts— all damage, whether material or moral, gives rise to reparation if three requirements or elements are met: *first,* proof of the reality of the damage suffered; *second,* a causal relation between the damage and the action or omission of another person; and *third,* said act or omission is negligent or wrongful. 4 Castán, *Derecho Civil Español* (8th ed., 1956) 814 *et seq.*; Puig Peña, *Tratado de Derecho Civil Español,* Tome IV, Vol. 2 (1951) 537 *et seq.*; 2 Díaz Pairó, *Teoría General de las Obligaciones* (3rd ed., 1954) 51 *et seq.;* Borrell, *Responsabilidades Derivadas de la Culpa Extracontractual Civil* (1942) 60–76, 157–77. That precept '. . . does not admit a limitation or exception of any kind; and consequently, the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong, that the victim be delivered from the effects of the damage suffered.' Borrell, *op. cit.,* 169. Thus, the manner how damage is caused is immaterial. And, by the same token, material as well as purely moral damages are recoverable in our jurisprudence." (Citations.)

■ We are of the opinion that the facts of this case irrespective of whether or not the attachment was completed, give rise to the imposition of liability under the letter of § 1802. We have here a situation in which there have been unjustified acts on the part of the appellant showing carelessness or negligence, and furthermore, damages have been proved.

■ The result of the action of repossession filed by the appellant is one of the elements which stamp the character of impropriety and injustification on its acts. Its contention that said suit did not terminate favorably for the plaintiff on the basis of what happened to be a dismissal for abandonment, has no merit. Rule 39.2 of the Rules of Civil Procedure of 1958 clearly states that: ". . . a dismissal under Rule 39.2

and *any dismissal*, other than a dismissal for lack of jurisdiction or failure to join an indispensable party, *operates as an adjudication upon the merits.*" (Italics ours.) The same result was obtained under the Rules of 1943. *Cf. Costas Purcell* v. *Superior Court, ante*, p. 10, *Bolker* v. *Superior Court; Sosa, Int.*, 82 P.R.R. 785 (1961).

 Another reason which renders appellant liable for its actions is the fact that it had already received a certified check, at its own request, in payment of the obligation it claimed. The contractual relation between plaintiff Berríos and appellant had terminated because the certification of a check at the request of the person to whom it is issued relieves the drawer of responsibility as well as all its endorsers. Section 541 of the Code of Commerce—19 L.P.R.A. § 365. Upon the drawer and the endorser becoming released of obligation there exists an obligation on the part of the drawee bank to pay the amount of the check to the holder thereof inasmuch as the receipt of a certified check at the request of the person to whom it is issued is equivalent to the receipt of money in cash. The appellant occupied with respect to the bank the position of a depositary of the separate funds of the account of appellee Tomás Berríos as a result of the certification of the check. *Cf. San Juan Dock Co.* v. *Treasurer*, 52 P.R.R. 89 (1937); *Armstrong* v. *United States*, 171 F.Supp. 835 (Pa. 1959); *Mitchell* v. *Asbury*, 95 S.E.2d 341 (Ga. 1956); *Umbsen* v. *Crocker First Nat. Bank of San Francisco*, 203 P.2d 752 (Cal. 1949); *Fiss Corporation* v. *National Safety Bank & Trust Co.*, 77 N.Y.S. 2d 293 (1948); Bailey, Bank Checks 154–157 (2d ed. 1962). Consequently, appellant was entitled to collect from the certifying bank the amount of the check, by giving, if the latter so required, sufficient guarantee for the protection of the bank in case that later the check should appear in the hands of a holder in good faith. *Cf. Vineland Nat. Bank & Trust Co.* v. *Edwards*, 147 Atl. 374 (N.J. 1929); Bailey, *op. cit. supra*

at pp. 311–312. Or since the amount involved was small in this case the bank could have changed its practice previously indicated and consequently have paid the check to a holder of recognized solvency upon receipt of a written commitment to guarantee the bank any claim by reason of said payment, assuming, of course, that said holder should be in a condition to sign said writing. Furthermore, the holder could have filed an ordinary action against the unknown holders of the check in question to establish by a declaratory judgment that he had retained title of the instrument in order to require its payment from the bank.

The drawer was justified in refusing to authorize the bank in writing, as the latter had suggested, to pay the check since in effect said authorization would impose on him the responsibility for the aforesaid instrument when he had already been relieved of any liability as a consequence of the acceptance of the check by the bank.

It is true that the appellant was entitled to receive the amount of the check as part of the price of the property sold to plaintiff, but the procedure that it selected for collecting the $100 after the certified check was misplaced was improper and faulty, thereby prejudicing plaintiff Berríos.[3] A company such as the International General Electric, whose sales and businesses with the bank are a question of routine should have obtained the proper advice in order to follow the adequate procedure for the purpose of enforcing its rights.

---

[3] This is what the textwriters such as Borrell Maciá, Cammarota and Castán have labelled as "the abuse of the law."

"Abuse of a law is to rely on a legal provision, on a law closing the eyes to the reality of the facts, to the course of the world, and to act as if only that provision were a reality, even though trailing off the roads of justice and of equity. Borrell Maciá, *Responsabilidades Derivadas de Culpa Extracontractual Civil* 115–142 at p. 122 (2d ed. 1958); *cf.* Cammarota, *Responsabilidad Extracontractual* 131–161; I-2 Castán, *Derecho Civil Español, Común y Foral* 50–58 (8th ed.), and Vol. IV, 7th ed., pp. 782–83.

▇ 3.—The third error based on the weighing of the evidence lacks merit, because the question of whether or not two checks were issued under No. 97, or whether demands were made on Berríos before the action of repossession was filed, in order that he should authorize the bank to pay the certified check, and whether or not the attachment was executed or merely served, does not affect materially the conclusion that the action filed in this case does not lie as we have shown. Although it is true that marshal Rivera and appellant's agent testified that the steps taken by them with respect to the service of the attachment were executed peacefully and not in a notorious manner, it is no less true that there was ample and convincing evidence to the contrary for which reason the trial court was justified in settling the conflict in said evidence in favor of appellees' contention. Nor was said court bound by the circumstances of the case to conclude that the action of repossession was a reasonable action on the part of appellant (a) to obtain what he believed in good faith could be required at law, or (b) by reason of the suggestions of Banco Popular as to the practice which should be followed in cases of lost certified checks, as we have previously shown.

▇ 4.—The last error assigned consisting in the determination on the payment of attorney's fees also lacks merit, for the element of obstinacy is manifest in this case. *San Miguel & Cía.* v. *Santiago*, 87 P.R.R. 299 (1963); *Ortiz* v. *Martorell*, 80 P.R.R. 525 (1958); *Prado* v. *Quiñones*, 78 P.R.R. 309 (1955); *Castro* v. *Payco, Inc.*, 75 P.R.R. 59 (1953). However, we believe that within the circumstances of this case the amount of attorney's fees fixed by the trial court is excessive and should be reduced to $500.[4]

---

[4] The judgment of the trial court with respect to the amount of damages was not challenged.

For the reasons stated, the judgment should be modified and as thus modified, affirmed.